Opinion.

### Richmond.

## COMMERCIAL TRUST COMPANY, TRUSTEE, AND OTHERS v. FIRST NATIONAL BANK OF RICHMOND, VA.

March 9, 1911.

Absent, Harrison, J.

1. APPEAL AND ERROR—*Appeal on Only One Branch of a Separable Controversy.*—Where several matters of a separable nature have been voluntarily submitted to and decided by this court, and a party having the right to appeal to the Supreme Court of the United States has, with full knowledge of his rights, appealed as to only one of them, and as to the others has taken no appeal and made no complaint, the decree of this court remains operative as to such other matters.

Appeal from a decree of the Chancery Court of the city of Richmond.   Decree for petitioner.   Defendant appeals.

*Affirmed.*

The opinion states the case.

*Munford, Hunton, Williams & Anderson* and *R. G. Bickford,* for the appellants.

*George Bryan,* for the appellee.

KEITH, P., delivered the opinion of the court.

This is a branch of the chancery suit of *Hawes & Company* v. *Trigg Company,* which has been before this court in several aspects.   Under the style of *Hawes & Company* v. *Trigg Company* there is reported in 110 Va. 165, 65 S. E. 538, a controversy between the First National Bank of Rich-

mond, Va., and certain persons claiming liens for labor and supplies, growing out of the construction by the Trigg Company of a vessel for the United States government known as the "Mohawk." Before this vessel was completed, the Trigg Company became embarrassed, a receiver was appointed, and on May 16, 1904, the United States government paid into court to the credit of the cause the sum of $26,705.35, in full settlement of the amount due the Trigg Company for the construction of that vessel. The cause was referred to a commissioner to report upon the distribution of this fund, claimed by the First National Bank of Richmond, Va., by virtue of an assignment from the Trigg Company, and by those who had furnished labor and supplies under liens by virtue of State statutes in such cases made and provided. The report of the commissioner was returned, which set forth the liens for labor and materials which had been perfected against the "Mohawk," all of which appear to have been junior in point of time by more than two years to the assignment asserted by the bank. The report of the commissioner was in favor of the supply and labor. liens, and to that report the bank excepted; and a decision having been rendered adverse to it, it appealed to this court, which in the opinion filed thus states the case before it for decision:

"The precise question, therefore, now to be decided is as to the priority of right between the First National Bank, claiming under the assignments above referred to, and the subsequent liens for labor and supplies. As we have observed, the validity of the liens was established in *Bank* v. *Trigg Co., supra,* 106 Va. 327 [56 S. E. 158, 7 L. R. A. (N. S.) 744], and must prevail, unless the bank, claiming under the assignments, shall be found to have the older and the better right."

After a full consideration of the subject, the court was then of opinion, "That from every point of view the claim

of the bank is meritorious and ought to prevail; that its exception to the report of the commissioner should have been sustained; and that, in this respect, the decree appealed from is erroneous and should be reversed."

On the same day upon which that opinion was rendered another branch of the suit of *Hawes & Company* v. *Trigg Company* was decided, involving many interesting and difficult questions.

The United States government acquiesced in the view of this court with respect to the fund derived from the construction of the "Mohawk"—it did not, at least, appeal from the decree in that respect. It did, however, appeal from other portions of the decree with reference to other vessels constructed for it by the Trigg Company, and that appeal, under the style of *United States* v. *Ansonia Brass &c. Co. and others,* was heard and determined by the Supreme Court at its October term, 1910. 218 U. S. 452, 55 L. Ed., —, 31 Sup. Ct. 49.

When the decree involving the assignment was certified to the Chancery Court of the city of Richmond, the First National Bank filed its petition, praying that after deducting certain expenses and charges the "Mohawk" fund be paid over to it, and on the same day a decree was entered to that effect; and certain lienors for labor and supplies and other creditors of the Trigg Company, deeming themselves aggrieved thereby, applied for and obtained an appeal to this court. Their contention is thus stated in the petition for appeal:

"It is maintained that the provisions of the decree of 16th of May, 1904, that the fund should be deposited and remain undistributed until the rights and equities of all the parties to this suit, claiming any rights to said funds shall be determined, was intended to meet just such a situation as this, and the fund was to be held until the ownership of the vessels was finally determined, and the

rights and equities of the parties finally ascertained. In ascertaining these rights full effect must, of course, be given to the Court of Appeals' decision that the assignment is valid, but that is the full effect of the decision of that court, and it is maintained that it could not have intended by this decision to have interfered in any way with the terms and provisions of the above mentioned decree of the chancery court.

"It is conceded that this payment was made by the United States upon the claim that it owned the 'Mohawk,' and while it got possession of it under its stipulation, it claimed that it held possession under the provisions of its contract with the Trigg Company, and that it might complete the vessel, the Trigg Company having failed to do so, at the cost of the latter. But the Court of Appeals has held that the United States was mistaken in this, and that it did not have title to the 'Mohawk,' but that the title was in the Trigg Company, and was subject to its creditors, whether lien or general. In this view of the case, there was nothing due by the government to the Trigg Company under the contract of April 20, 1900, upon which the assignment to the First National Bank can operate, and pass the fund to the bank.

"But it may be argued that the government paid this sum on this theory, and is not now before the court claiming credit for it on the amount due the Trigg Company for the 'Mohawk' under its stipulation. This is unquestionably true, but the United States is still maintaining that its position is correct and the Court of Appeals of Virginia is wrong, and is asking the Supreme Court of the United States to reverse the Virginia court upon its assignment of errors. If it does not succeed in reversing the Court of Appeals of Virginia, when the Virginia court undertakes to collect the value of the 'Mohawk' under the stipulation, the United States will doubtless undertake to have the

amount which it is required to pay for the 'Mohawk' reduced by the sum which it has already paid the receiver of this court on account of the 'Mohawk' (and it is apprehended that this position will be sound), and the bank will have received this sum as due under the contract of April 20, 1900, under its assignment, when in fact nothing was due under that contract from the United States. If the United States does not take the position that this is an offset, or does not sustain it, the bank will be entitled to this fund under its assignment, or if the United States Supreme Court reverses the Supreme Court of the State and holds that the 'Mohawk' belongs to the government, then the bank is entitled to this sum under its assignment, but nothing definite can be determined as to these matters until the Supreme Court of the United States, the court of last resort, has handed down its opinion, and the United States discloses its position, and the court has passed upon the soundness of it. There can be no great hardship in requiring the bank to wait until this time, certainly not so great a hardship as it would be upon the creditors of the Trigg Company, who have received so little, some nothing, on account of their claim, for this fund to go out of this cause to a party who may finally not be entitled to it, and they deprived of its benefit, and subsequent decisions may show that they are entitled to it. If the money is now paid to the bank, it passes from the other creditors of the Trigg Company, who may hereafter be adjudged to be entitled to it."

The case taken to the Supreme Court, referred to in this extract, has been decided, the decision has been reported, and we are unable to see that it affects any question presented in this cause. The United States voluntarily paid into the Chancery Court of the city of Richmond the amount due by it upon the "Mohawk"; it submitted to the adjudication of the court all questions arising as to the distribution

of that fund, subject only to the provision that the Secretary of the Treasury might, if he should see proper, appeal from its decision, and then provided that "if a final judgment is hereinafter given and awarded in the court of last resort to which the Secretary of the Treasury may deem it proper to cause such proceedings by which said property is at present held to be carried, affirming the claim or claims for security or satisfaction for which such proceedings have been instituted, and the right of any person or persons, firm or corporations asserting the same to enforce against said property by means of such proceedings, notwithstanding the claims of the United States thereto, such final judgment shall be deemed to all intents and purposes as a full and final determination of the rights of such person or persons, firms or corporations, and shall entitle such person or persons, firms or corporations as against the United States to such rights as he or they would have had in case the possession of such property had not been changed." This provision is subject only to the further stipulation, "that the amount to be so allowed and paid shall not exceed the value of the interest of the United States in and to the property in question at the time when such property is released and discharged under and by virtue of the making and filing of this stipulation and undertaking."

We have seen that from a part of the decree of this court the United States Government exercised its right of appeal, but that with respect to the assignment of the "Mohawk" fund, which was disposed of by this court at the same time and in the same decree, the United States Government has taken no appeal nor made any complaint. The case stands now upon its facts just where it did when the original decree of the chancery court was rendered, and just where it did when the decree of this court was rendered, reversing the chancery court with respect to the assignment to the First National Bank, and establishing its lien as being su-

perior to that of labor and supply liens, and *a fortiori* as superior to the claims of the general creditors of the Trigg Company. We do not apprehend that the United States Government will assert the set-off suggested in the petition for an appeal in this case, for to do so would be to withhold a fund from those justly entitled to it in order to indemnify itself against a decision of a controversy which it voluntarily submitted to this court, from which it had the power to appeal, and which right, with full knowledge of all of the facts, it has failed to exercise.

We are of opinion that the whole subject now before us was involved in the case of *Hawes & Company* v. *Trigg Company,* 110 Va. 165, 65 S. E. 538, and is finally disposed of by by that decision.

The decree of the chancery court is affirmed.

*Affirmed.*